The next case is 124565 Sanders v. Union Insurance Co. and others, Agenda No. 15. Counsel, I understand both sides, you've divided your arguments. The clerk will give you a warning. If you overstay your welcome here at the podium, it will be subtracted from your co-counsel. You may proceed. Thank you. Good morning. Good morning. Good morning. May it please the Court. Miguel Arepas on behalf of the appellant, Starr, indemnity and liability complaint. This case involves a discreet legal issue. What is the trigger of coverage for a criminal malicious prosecution claim under an occurrence-based policy? Is it as Illinois precedent has held and as the circuit court correctly held? Is it the date of the filing of the charges? Or is it as the appellate court below incorrectly held, the date of exoneration when the underlying tort claim accrues? And the answer to the question lies in the insuring agreement itself. The insuring agreement sets forth what is required, what events are required during the policy period in order to trigger coverage. And the insuring agreement states there are two events. One is the occurrence during the policy period. And two, it's personal injury during the policy period. Both of those things have to happen in order for this occurrence-based policy to be triggered. Let's look at exactly what that means. An occurrence is simply the predicate event that gives rise to the claim. It's the conduct that causes the claim to arise in the first instance. And to be clear, this could be the insured's own conduct or it could be a third party's conduct. It's simply whatever the event is that precipitates the claim. In the malicious prosecution context, it's the prosecutor who files the charges. But the insured, the city's police officers, have engaged in certain things, misconduct, before that leading up to it that causes the charges to be filed. But it's not these prior events that are actually the trigger of coverage. Counsel, is the events in 2013, the retrial, and the retrial in 2014 not occurrences? Those are not occurrences because it's the charging that is the occurrence. That is what precipitates the claim. But didn't he have to be recharged for both of those? Because it was vacated? The conviction was vacated. But the charges were still pending. These are the identical charges that he was initially charged with. So the status quo vis-a-vis Mr. Sanders is exactly the same as it was at the outset. He's still facing charges, which were the same charges he faced at the beginning. So the trial itself is not the trigger of coverage. You could have malicious prosecution even without a trial. So, for example, if the prosecutor dropped the charges or the case never went to trial, there could still be commencement of a prosecution of a criminal charge with malice and without probable cause. So the trials are really irrelevant for purposes of the trigger of coverage. That's the occurrence. And the occurrence is the charge. That happened in 1994. So that's why that insurer paid. The policy in effect in 1994 was the policy that paid. The years, policies in effect years and years later when Mr. Sanders is eventually exonerated, retrialed and eventually exonerated, that's not the occurrence. That's not what occurrence-based policies cover. They cover conduct, acts and omissions that take place during the policy period. So that's the occurrence. That's the one thing that has to happen during the policy period in order to trigger coverage. The policies here specifically say you also need personal injury during the policy period. And that's easy. That's just the harm. The harm from malicious prosecution. So you need those two events occurring during the policy period in order to trigger the policy at issue. Now, with this critical context in mind, it's very important to keep this context in mind because this context is what informs the definitions of those terms. Both occurrence and personal injury both share a common definition. They're defined with reference to the personal injury of the offense, the offense of malicious prosecution. So understanding that the offense is giving meaning to both occurrence, which is the conduct, and injury, the personal injury. That is the purpose of what the offense of malicious prosecution is meant to do. So malicious prosecution, yes, there's a common definition. That doesn't eliminate the dual requirements. It simply means we can use one term, malicious prosecution, to describe both the occurrence, the conduct, and the resulting injury, the personal injury. Because the reality is is that in the malicious prosecution context in particular, as with the other personal injury offenses, the conduct and the injury are inextricably linked. So to commit or to do the conduct is necessarily to inflict the injury. So malicious prosecution is one example. Malicious prosecution, when the charges are filed with malice and without probable cause, that's the conduct, and that automatically inflicts the injury. The victim suffers reputational harm. They're required to pay a bail. A whole host of other things that happen if the victim is eventually charged, or I'm sorry, eventually convicted and imprisoned, as is the case here. Well, the imprisonment didn't occur, didn't end until years later, but the harm began immediately in 1994. So that is the policy that is triggered. It's not the policies in effect years later. Counsel, let me ask you this. I get your point about the occurrence and the injury, but in terms of looking at the contract, insurance contract as a whole, the one that's in the record here, Common Law Record 2450, it's the Ace Advantage policy. The insuring agreement talks about for which the insured becomes legally obligated to pay. How does that define the triggering event when it says becomes legally obligated to pay? Nobody is legally obligated to pay on the first day. That's correct. And that's the insuring agreement. I mean, the insuring agreement says what is going to be indemnified, what are the insurer's obligations, what the insurance company will indemnify. The trigger of coverage is sort of folded into that insuring agreement. Trigger of coverage is simply what are the events that put the policy in play. It doesn't really say anything about what, if the policy is triggered, would the policy eventually indemnify, and that's a separate question. So trigger of coverage is what is required during the policy period, and we have two instances during the policy period, and it's occurrence and personal injury. Now, exoneration, as the appellate court held, exoneration as a trigger of coverage simply doesn't make sense because, number one, obviously it ignores the context of the insuring agreement, but, two, it's simply irreconcilable with the fact that you could have an insurance policy triggered before exoneration. I mean, as is the case here, for example, if the claimant, Mr. Sanders, files a malicious prosecution tort claim before he's exonerated, the tort claim itself is premature, right? But an insurance company who had a duty to defend could never just walk away and say, no, no, no, I'm not going to defend because the claim is premature. No, they would otherwise, if they otherwise have a duty to defend, they would have to hire a defense counsel, and the defense counsel would press that defense in the tort action. So the fact that a policy can be triggered before exoneration indicates that exoneration cannot possibly be the trigger of coverage. It's the charge. That is when the policy is triggered. And not only that, it simply turns the benefit of the party's bargain on its head. These are occurrence-based policies. Occurrence-based policies are known to cover conduct during the policy period, and it's Indian Harbor, the Indian Harbor case that we've cited, says that policies' references to occurrences and offenses during the policy period, that reflects the party's intent to ensure acts and omissions during the policy period. So that is consistent with the date of charging. It is consistent with the very fundamental nature of occurrence-based coverage, and that is a consideration that the court must take into consideration when construing the policy, not only as a whole, in context, but also in light of the insured risk and in light of the type of coverage at issue. So to adopt an exoneration trigger would be to turn that benefit of the bargain on its head and convert an occurrence-based policy into some different type of policy that we don't even recognize. It would be like an accrual of the tort-based policy, and that is simply not the type of policy that the city purchased in this instance. So the benefit of the bargain has to be upheld and respected, and a charging date as the trigger of coverage best comports with the party's own intent to the policies at issue here. So again, to recap, the insuring agreement answers the question here. It's two things, occurrence, which is conduct, personal injury, which is the injury during the policy period. It is undisputed neither of those things happened here, therefore the policies are not triggered. Thank you. Thank you. Shall I proceed? Good morning, Your Honors. May it please the Court, Chris Wadley for Illinois Union Insurance Company. I want to start where Ms. Revis left off, and that is the Court's primary function in interpreting an insurance policy is to give effect to the party's intent, and in doing so the Court must read the policy as a whole, take into account the type of insurance that was purchased, the nature of the risks, and the overall purpose of the contract. If the Court looks at this contract, which is indisputably an occurrence-based policy, what the parties have bargained for is that the carriers are going to insure the city for liability that the city incurs for bad things that happen during the policy period, occurrences for bodily injury, personal injury, advertising injury, property damage. So we're talking about something bad that's going to happen during the policy period that is going to cause liability to be imposed upon the city. So in this case, what the parties entered into a bargain for here is the carriers said, we're going to cover you if someone is maliciously prosecuted during this policy period. That's what the parties bargained for. And interpreting those words as any reasonable person would, you would ask yourself, okay, when was Mr. Sanders maliciously prosecuted? Did his malicious prosecution occur when he was framed and charged with crimes that he did not commit based on fabricated evidence with malice without probable cause? Is that when his malicious prosecution occurred? Or did his malicious prosecution occur 20 years later when that offense was rectified by the system and he was exonerated? Any reasonable person would interpret, oh, of course Mr. Sanders was maliciously prosecuted when he was wrongfully charged, not when he was exonerated. And that would be the expectations of the parties entering into an occurrence-based policy. There was no offense in any reasonable interpretation of that term, particularly when viewed in the context of how this policy is crafted. No reasonable person would interpret that language, offense, as referring to the date on which Mr. Sanders was exonerated. And basically the argument that Mr. Sanders and the city are making, and I think the fundamental error in the appellate court's opinion here, was that it conflates tort concepts of approval with insurance concepts of occurrence and personal injury and when those things take place. Coverage does not depend upon when the cause of action accrues. As Ms. Revis said, this is an occurrence-based policy. It's not an accrual-based policy. The policy speaks in terms of when the offense has occurred, not when the cause of action has ripened into something that someone can sue for. And the tort of malicious prosecution actually provides a good example of why that distinction is made here because, again, when we're talking about the requirement of exoneration, we have to think, what purpose does that requirement serve in the context of a malicious prosecution action? Exoneration has nothing to do with the wrongful act that's been committed. It has nothing to do with the injury that was inflicted. Both of those happened at the time that the person was subjected to a wrongful malicious prosecution. What it is, is it basically serves judicial economy and practical considerations in the sense that you cannot have persons who have been either convicted or subject to civil proceedings, what have you, you cannot have collateral attacks upon a criminal judgment or a civil judgment. People cannot sue for malicious prosecution simply because they've been arrested and charges have been filed against them. So the system requires that there be a favorable outcome of that underlying malicious prosecution before the right of action accrues. It serves to rebut the presumption of probable cause. It prohibits collateral attacks on the existing judgment. It prevents inconsistency between the two judgments. And it forestalls unfounded actions. But it has nothing to do with the actual offense of malicious prosecution that has already occurred. So construing the word offense of malicious prosecution to mean exoneration will distort the plain and ordinary understanding of that term. It's also, as I mentioned, contrary to the intended operation of the policy. It strains logic to retroactively apply an occurrence-based policy to activities that were taken years earlier based on what is ultimately a fortuitous date of exoneration. Again, what the parties are ensuring is that the possibility, the risk, that a bad act is going to happen during the policy period that causes injury, not the risk that someone might be exonerated during the policy period and therefore sued for a malicious prosecution where all of the facts giving rise to malicious prosecution occurred 10, 15, 20, 30 years ago. That's asking an insurance company to then assume the risk of all prior prosecutions that happened based on the fortuitous event that someone might be exonerated during the policy period. And that's not consistent with the intent of the parties to an occurrence-based policy. It also results in unwise policy implications. And I know the Court's focus is on the actual words of the contract, but I think it is important to consider what the broader ramifications are of a ruling that the offense refers to the exoneration rather than the wrongful act, the charging of the prosecution. Because, as the cases make pretty clear, tying the trigger of coverage to the offense of malicious prosecution is a standard term in many law enforcement liability or commercial general liability policies. And so what you'll have then is you'll have an opportunity for both sides, the insurers and the insurance, to manipulate coverage. If an insurer knows that they have a troubled prosecution that could be heading towards an exoneration, then they might decide to buy a lot of insurance covering the offense of malicious prosecution just in time for that exoneration to occur. Conversely, if an insurer was on the risk when the malicious prosecution occurred or when the underlying charges were filed, stays on the risk, renews the policy year after year after year after year, but then sees, wow, we've got a bad decision from the appellate court, that conviction's been vacated, it's coming back, and it looks like this person's going to be exonerated, they might non-renew the coverage at that point, leaving the insurer to go out and find, gosh, now I have to go out and find somebody who's going to cover me for the offense of malicious prosecution after the carrier that's been on the risk all those years with this impending exoneration has decided to stop issuing policies. It also, as Ms. Brevis alluded to, creates a problem where what if the claimant files a malicious prosecution lawsuit before he's been exonerated? Sure, that is a meritless claim because you have to have exoneration in order to impose liability, but somebody has to defend against that. A lawyer has to be hired to come in and file that motion. And so who do you tender that to? You tender it to the carrier on the risk when the person was charged. They say, you know, no liability because he doesn't allege exoneration. There's been no offense of malicious prosecution because there's no allegation of exoneration, and likewise the carrier on the risk at the time the suit is filed will say, well, there's been no offense of malicious prosecution because no exoneration has been alleged in the complaint. So that's not the way coverage works. That's not the way the defense works. We're not going to say coverage isn't triggered unless they allege all of the elements of the cause of action. If they're alleging a malicious prosecution based on conduct that occurred, i.e., a false criminal prosecution that was filed while the policy was in effect, that's when the offense of malicious prosecution occurs. That's the policy that must respond if the trigger date is the offense of malicious prosecution. And, again, this is not a situation where a carrier is trying to duck coverage. Offense of malicious prosecution has to be one or the other. It can't be both, which is what the city and standards have wanted in this case because they did get coverage under the policy in effect in 1994. But I see that my time is up. But for those reasons, we would ask that the court reverse the appellate court and confirm the intravenous decision. Thank you. Please, the court. Mike Hanovitz for Rodell Sanders. I only have ten minutes, so I want to get straight to the point. I agree with opposing counsel that there is one issue for the court to decide. It is not the abstract question of what the trigger should be under occurrence policies involving malicious prosecution in the state of Illinois. It is the question of what did Illinois Union mean when it used the term offense to describe both the trigger of coverage and the risks that were being assured. And very importantly, since there is a line of case law where the lower courts are doing what you've told them to do, which is let's look at the policy language and decide what these terms mean, Illinois Union did something that none of the other insurers did. It altered the standard form definition of the term personal injury. Personal injury in standard form is described as injury arising out of an offense and then the list of offenses. Illinois Union took injury causation out and said personal injury means those offenses. Now that changes the calculus on how you go about deciding what offense means when you apply the usual rules of contract construction. It changes it for two reasons. One is when an insurer steps off the standard form, it does so because it thinks it's going to get something out of it, and it did get something out of it. When it changed from injury arising out of an offense, it changed the meaning of offense from a conduct that causes injury to an offense standing alone that doesn't have to cause injury. They want to say that offense here means conduct, and we're saying no, it means a tort. Well, they got the definition of offense means tort, which is a far narrower scope of coverage, because they do use personal injury to describe the risks assured, than is conduct that can give rise to malicious prosecution, because conduct that can give rise to malicious prosecution or the other named torts can give rise to related torts, torts that require different elements, torts that don't have an indicative of innocence requirement, torts that don't have a lack of probable cause requirement, things like constitutional breeding torts, things like abusive process, things like intentional infliction of emotional distress. If offense means conduct, and what they are assuring against is the conduct, I'm sorry, the risk of the conduct, then all of those torts are covered. And what that means is sanders can't lose both ways. If offense, as Illinois Union wrote it, means conduct, then there is coverage in coming out of the post-conviction proceeding, which really does change everything. Following the post-conviction proceeding, a court said, I'm reversing the conviction. Give this man a new trial or freedom. And my court tells us that if you want to know if there is an occurrence in more than one policy period, you use an injury causation test. And following the order to release him from trial, there is absolutely new conduct alleged in the complaint that causes injury that would not have happened but for that new conduct. If the defendants hadn't dusted off their fake evidence and put it back to use, Mr. Sanders would have been released. And it is unrealistic to say everything that Mr. Sanders suffers came out of the initial wrongful conduct. It is on all fours with the case cited in my court, the Archdiocese case, where a child who is exposed to a priest in two policy years, the Archdiocese is held responsible for negligent supervision in two policy years. And the Archdiocese court says, well, because the Archdiocese received notice in policy year number two, that's a new occurrence, and both policy years are triggered. That's exactly the same as the Monell claim here against the city of Chicago Heights. City of Chicago Heights, after summary judgment, was left in the federal case on the grounds that it did not properly supervise its officers, leading to these violations. And the officers' conduct was described not only in the post-conviction ruling, which came out after these insurers were on risk, but also in Sanders' 2013 lawsuit. So that's twice that Chicago Heights has given notice. Like I said, it's on all fours with the Archdiocese case cited in my court, discussed in my court, approved in my court. We can't lose both ways. Returning back to the interpretive issue on why you should find that, as written in this policy, offense means tort. Like I said, they've done something that distinguishes them from every other policy that the courts have considered, which is they've changed the definition of personal injury. Was the United National policy, which settled for the full amount, written differently? It was. Thank you for that question. It was what's called a law enforcement liability policy, not the general liability policies that are before you. And its trigger was expressly a wrongful act. So it didn't matter when the injury occurred. It didn't matter when the tort occurred. It was a wrongful act case. And, you know, as you know from having reviewed plenty of these cases, you can have multiple policies triggered based upon the fact that the policies incorporated a different trigger by the express language of the policy. So having removed the concept of injury causation from offense, they're really left with not a lot to argue. They don't have injury arising out of it. They don't have committed. And so they're making arguments that are extraneous to the policy, which are the idea that, oh, it would be crazy for an insurer in an occurrence policy to insure this stuff. Well, it's not crazy. In the reply, Illinois Union, I'm sorry, Starr cites you to Cook County's policy where Cook County made them clarify the ambiguity, and it says specifically we pay if the exoneration takes place during the policy period. So the occurrence policy must not be crazy. You have an insurer selling a policy and making a payment. They avoid the long tail on liability. Exoneration, which is what they'd be insuring against at that point, is an incredibly unlikely event. I mean, we all know that from the way these cases work, the way through the judicial system. That's what insurers insure. And finally, this insurance company got the benefit of limiting their coverage to the enumerated torts and no other rather than conduct that can result in related tricks that present different risks. Secondly, they're misreading the assuring clause. In their reply, they're basically describing the assuring clause as one long trigger stated in two steps, and it's not. What it insures against is damages from a claim, which there's a lawsuit. So damages from a lawsuit arising out of an offense. That's the trigger. The second clause, after the word for, describes what the claim has to be about. So without the second clause, if it's triggered, then they're covering everything in the case, in the complaint. The for limits what they cover in the complaint. So briefly on the NYCOR issue, the city of Waukegan case raised an issue saying, well, we don't really have to look at trigger because police officers testify. They get witness immunity. That is true only as to the police officer's capacity as a witness. Their capacity as conspirators with other witnesses, there is no immunity. And certainly for the city in its capacity under the Monell claim, there's no immunity issue whatsoever. It can't sidestep the NYCOR issue that way. And I managed to get everything I wanted to get into my ten minutes. So if there's no further questions, let me just summarize quickly. The lower courts are following, I believe, more or less correctly this court's general instruction about how to deal with the trigger issue in malicious prosecution, which is look at the policy and apply the usual rules of construction. If the policy has clearly stated a trigger, you follow that. If not, if it's ambiguous, an offense here is at best ambiguous the way they've drafted it. You've got to give it a pro-insured interpretation. And separately, we can't lose either way. We have to win one of them. Thank you. Thank you. Good morning, your honors, counsel. May it please the court. My name is Paula Petretti, and I and my colleague, Darcy Williams, are here on behalf of the city of Chicago Heights. This court should affirm the first district appellate court decision because affirmance will ratify a fundamental preset of contract law. Commercial insurance policies should be strictly construed and interpreted as a matter of law on a case-by-case basis. Recently, we have seen Illinois courts trending toward an attempt to establish a general rule for the trigger of malicious prosecution. These courts have appropriated what has been dubbed the majority rule, which fixes the trigger for malicious prosecution at the time of charging. The first district appellate court rejected the application of a general rule, finding that it simply could not be applied to the plain and simple language of the policy. The court recognized that the language in the Illinois union policy is different from the policy language in the majority of the cases. The majority construed a different definition of personal injury, one that covers claims for injury arising from certain specified torts or for claims of wrongful injuries causing torts. By contrast, the Illinois union language provides coverage for claims of the offense of malicious prosecution. We maintain that this is a distinction with a difference that warrants the first district's departure from the majority rule. Now, dating back to 1978, Illinois has seen its share of declaratory judgment actions addressing the triggering date for malicious prosecution. Most of those cases being published in the last day. But this will be the first time the Illinois Supreme Court will address this issue. And in fact, this court is the first state supreme court in the entire country that will grapple with this precise issue of the trigger for malicious prosecution in the wrongful conviction setting. Prior to today, there were only two state supreme courts that addressed the trigger for malicious prosecution. Neither court viewed malicious prosecution in the wrongful conviction setting. In 1982, in Patterson Tallow Company v. Royal Globe, the New Jersey Supreme Court considered the claims of a disgruntled employee who was acquitted of charges that he stole thousands of pounds of meat from his employer. Now, that set of facts does not provide a sufficiently similar situation to wrongful conviction. And in 2010, the Massachusetts Supreme Court in Billings v. Commerce Insurance Company considered a malicious prosecution claim in response to a civil zoning violation. Similarly, this case has limited application to wrongful conviction claims. Neither case construes a law enforcement liability policy. And I do differ from my colleague here. This was a law enforcement liability policy that was at issue. There is a law enforcement endorsement of that is purchased. It's a very costly endorsement. And it covers the very specific risks that are faced by local law enforcement agencies. And this is a specialty policy that is designed to cover the risks. Law enforcement personnel are authorized to use deadly force. Their activities include arresting, imprisoning, detaining, and participating in the prosecution of individuals violating laws in their jurisdiction. And I bring this up because it is within this context of a law enforcement liability policy that this court must interpret the languages in the policy. What does offense mean in the law enforcement liability setting? Here the drafters of the policy, the insurers of this policy, clearly defined an occurrence with respect to personal injury as, quote, only those offenses specified in the personal injury definition, end quote. Counsel, what's wrong with the federal district court in Selective Insurance Company of South Carolina v. City of Paris? It's a rather long quote. I'll try to go through it as quickly as possible. But what's wrong with this analysis? It says in that case, the majority position itself is more persuasive. Under the facts of this case, the offense was committed for malicious prosecution insurance purposes when the prosecution was instituted, allegedly without probable causes. That is the essence of the tort and malicious prosecution. The insurer's policy at issue covered the insurer for personal injury that occurs during their policy period. Here the injury was contemporaneous with the initiation of the criminal proceedings against them and was complete long before the inception of the policy's coverage and the termination of the prosecution. To adopt the minority rule would strain logic as it would hold that a policy could be retroactively applied to activities undertaken 20 years earlier and would impose upon the insurer a risk based on the fortuitous date of exoneration as opposed to the date when the damage first manifested itself. That is the date of arrest, arraignment, or incarceration. Almost done. While the insurer has a duty to defend lawsuits against defendants for malicious prosecution claims occurring during the policy period, it is inconceivable that the calculation of the premium that defendants paid the insurer in order to purchase the policy included an analysis of an earlier prosecution by defendants and the likelihood of malfeasance over the course of those prosecutions. Rather wordy, but you get the point. What's wrong with that analysis? There's a lot wrong with the analysis. First, malicious prosecution has five elements, one of which is the favorable termination and favorable acquaintance. And malicious prosecution does not arise, and in fact, no injury is compensable until all of those elements are in place. And the drafters of an insurance policy, and I believe in that case, Your Honor, I believe the language in that policy was that the occurrence defined personal injury as injury arising from following offenses. And so that is distinguishable from the language here, which is personal injury includes only following specified offenses. There's no reference to injury. There's no reference to wrongful acts. And the further analysis in the Ferris case, the insurers have the full capacity to draft their policies in the way that they understand what their risks are. They are the ones that are shaping the risks. And we have seen policies that have different language, that either it's very clear that it's going to go back to the exception of malicious prosecution, but in this case, it does not. Also, the unwary insurers, in this case, and this was referenced by my colleague, this case was first filed before the malicious prosecution occurred. And so the city of Chicago Heights tendered their policies, the claim to all of the insurers who possibly could be at risk. So Illinois Union was on notice of this claim, and it resold the city the exact same policies from 2011, 2012, 2013, and 2014. And it could have changed the language to exclude coverage for malicious prosecution of this case, but it did not. And they were on full notice. The city had dialogue going back and forth with them saying, what is your position on this? And even in reselling it, they did not exclude this. The language is so straightforward and so clear that they had to know. Also, Your Honors, in that context, during this time when Illinois Union was on risk, you had American Safety come down, which was exactly the same language. American Safety, which found in favor of the city of Waukegan for coverage, that language covered the offense of the malicious prosecution. And in that opinion, Judge Easterbrook states, if the language had been different, the result may have been different here. But the coverage that is provided by this policy, exactly the same language that is provided in Illinois Union, the malicious prosecution is triggered at the time of exoneration and not at the time of the inception of the case. I hope that answers your question, Your Honor. It does. I'm just wondering if the fact that they did not provide an exclusion, knowing that the malicious prosecution was pending at the time, right? That's what you're saying. They continued to provide coverage. They never provided coverage. In fact, they never gave us a coverage opinion until 2014. There was no coverage ever provided by Illinois Union. No, but you're saying there was coverage. Part of your position is that there should have been coverage. There should have been coverage, yes. Maybe I misspoke on that. I was just wondering if the fact that they didn't have an exclusion in the policies in 13 and 14 is more of an indication that they didn't think there was coverage. Why wouldn't they have put an exclusion in there if they thought there was to be coverage? Your Honor, at that time, the state of the law in Illinois, which was based on security mutual, which said that the date of exoneration triggers malicious prosecution, that was the state of the law in Illinois. And so they should have made the exclusion. It was definitely an issue at that time. Thank you, Your Honor. Thank you. Reply. I'd like to make four brief points on rebuttal. First, in response to what Ms. Petraeus just said about security mutual being the state of Illinois law when the policies were issued, security mutual is a reversed case. That's never represented Illinois law. The Seventh Circuit relied on security mutual predicting Illinois law. Insurers don't write their policies according to that. They don't write their policies according to a reversed decision that the Seventh Circuit later adopts. And, in fact, the Illinois appellate court has rejected the Seventh Circuit's prediction of Illinois law. So those cases are completely irrelevant here. Number two, opposing counsel says, well, these are unique policies. These are a different animal from other standard occurrence-based policies. Not so. The occurrence-based policies here, offense refers to the wrongful conduct and the injury. Indian Harbor says offense and occurrence refer to conduct. That is exactly what the policy here refers to. And offense encompasses both conduct and injury. Those two things are inextricably linked in the malicious prosecution context. So to say offense is to say conduct, and it is to say injury. In these cases, our policy might use slightly different trigger language, but it's all materially identical to the other Illinois cases that have construed occurrence-based policies. So when offense is talking about both conduct and injury, if you've got another case that's talking about wrongful conduct as the trigger, injury as the trigger, occurrence as the trigger, all those things are materially identical here. So these are all differences without distinction when it comes to comparing this case to the other Illinois cases that have held that charging is the triggering event. Now, opposing counsel also says, well, you know, they have this, you know, there are policies on the market where trigger is specifically exoneration. It says something like, you know, voiding of the charges or dismissal of the charges. Yes, there are policies on the market, and it's not because the insurers are attempting to clarify the ambiguity, as opposing counsel suggests. It's because it's an entirely different trigger of coverage. These policies are written by endorsement. They're not standard form policies. They are endorsements that are specifically and separately negotiated by the municipality. And what's more, paid for. There's a premium paid for that endorsement. So that option was out there. It's a different product, but that's not what the city here paid for, and that's not what its policy is triggered by. And finally, opposing counsel says, well, look, we can't lose both of those. We've got to find coverage somewhere. Well, they did. They got coverage under the 1994 United National Policy. That insurer paid its limits with no dispute. Because everyone understood that under Illinois law, the date of trigger is charging. And so the 1994 insurer stepped up and paid its policy limits. No dispute. That's exactly how it's supposed to work. Yes, theoretically, if you had two different policies that had different triggers, both could be triggered. But that's not what's going on here. As I explained before, wrongful conduct, which is the trigger under the United National Policy, is materially identical to occurrence, personal injury, offense. They're all getting at the same thing. And in the malicious prosecution context, it's the date of charging. It's all getting at the same thing. It's all materially identical. And so for all those reasons, there is really no distinction between this case and the other Illinois cases that until the appellate court's decision was issued, had uniformly held that a malicious prosecution case, coverage for a malicious prosecution claim, is triggered at the time of charging. That is a state of Illinois law before, and that should be restored. That uniformly should be restored to Illinois law. That is the correct result under an occurrence-based policy. So for those reasons, we respectfully request that this court reverse the appellate court's decision and reinstate the circuit court's decision. Thank you. Thank you. Mr. Barnley. Just picking up where Ms. Brevis left off, this is not some sort of manuscript, oddball policy that's in effect here. The offense of malicious prosecution is a standard term that triggers coverage. In fact, that was the trigger of coverage in the city of Paris case, which applied to personal injury only caused by an offense committed during the policy period. So the question there was, when did the offense occur? And that's also in two of the Illinois cases that preceded ours, County of McLean v. State Self-Insurance and First Mercury v. Cialino. Both of those cases, the trigger date was when the offense of malicious prosecution occurred. The only distinction, and one that was made by the appellate court here, is that there is some sort of meaningful distinction between when the offense of malicious prosecution is committed and when the offense of malicious prosecution happens or takes place. There's no meaningful difference between the two. Indian Harbor, in discussing the intent of the occurrence-based policy, used the words happened and committed interchangeably. In fact, the appellate court in our case below, when characterizing the policy at issue in First Mercury v. Cialino, said that policy, like the one present here, applies to offenses of malicious prosecution that take place during the policy period. So the appellate court in this case talked about not making gossamer distinctions between policy terms. That strikes me as a gossamer distinction. That is not a distinction that should require a polar opposite trigger date of coverage for purposes of when the offense of malicious prosecution takes place. There is, and as far as the multiple trigger argument, the appellees do not cite a single case anywhere that applies a multiple trigger to a malicious prosecution cause of action. There is a single prosecution. There is one prosecution that was commenced in 1994 when a series of criminal charges were filed against Mr. Sanders maliciously and without probable cause. That prosecution spanned 20 years because he had one trial he was convicted that was vacated because the trial court concluded and the appellate court affirmed that there was ineffective assistance of counsel. So there was a trial error that required those same charges to come back and be retried again. There were not any new charges. There was not a new prosecution. In fact, if charges had been dropped at that point in time and new charges brought, there would have been a double jeopardy problem. There was a single prosecution. There was a single malicious prosecution. And this is not a situation where you have charges that are initially based on probable cause and not maliciously brought, but then there's some evidence developed in the meantime that places doubt on whether the prosecution is valid or not. No, this is a situation where it was alleged from day one that this prosecution was malicious. So the bad act and the injury both occurred on the date that the charges were initiated. The injuries lasted for 20 years, and the fact that the prosecution continued aggravated those injuries, increased those injuries. It's like if I'm in an accident and I break a leg, I may have continuing injuries from that. But the fact is that the bad act and the injury has manifested itself, and that's the policy that's triggered. The fact that I may have ongoing injuries, the fact that my injuries may continue to compound for whatever reason, doesn't mean I get to trigger all those policies in effect while I still have pain in my leg. I've been hurt the second that that occurrence happened. Same thing here. Mr. Sanders was hurt. He was damaged the second that he was brought into a criminal court on false charges, and that's when the malicious prosecution occurred for purposes of triggering insurance coverage. And that's why Mr. Sanders and the city got insurance coverage on the policy in effect when those charges were filed, not the policies in effect when he was exonerated. And for those reasons, Your Honor, again, we would ask this court to reverse the appellate court's decision and affirm the charge for his judgment in the insurer's statement. Thank you. Thank you. Thank you. Case number 124565, Sanders v. Union Insurance Company, appellant, will be taken under advisement as agenda number 15. Ms. Reffes, Mr. Wadley, Petty, and Mr. Kenovitz, we thank you all for your arguments and your excuses.